UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

LOCKTON MANAGEMENT, LLC, LCM HOLDCO,
LLC, AND LOCKTON CAPITAL MARKETS, LLC,

                 PETITIONERS,

    -AGAINST-

VISHAL JHAVERI,

             RESPONDENT.

--------------------------------------------------------

**PETITION FOR AN INJUNCTION AND TEMPORARY RESTRAINING ORDER AND TO COMPEL ARBITRATION**

      Petitioners Lockton Management, LLC ("Lockton Management"), LCM HoldCo, LLC ("LCM Holdco"), and Lockton Capital Markets, LLC ("LCM," and together with Lockton Management and LCM Holdco, "Lockton"), by their attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, submit this Petition for an Injunction and Temporary Restraining Order and to Compel Arbitration against Respondent Vishal Jhaveri and allege, on knowledge as to its own acts and on information and belief as to all other matters, as follows:

<u>NATURE OF PROCEEDING</u>

      1.    This matter arises as a result of Jhaveri's wrongful threat to pursue litigation against Lockton in direct contravention of his agreement to arbitrate all disputes arising out of his employment before the American Arbitration Association ("AAA").

      2.    Lockton operates the world's largest independent insurance brokerage.  In 2018, Lockton hired Vishal Jhaveri to become the Chief Executive Officer of LCM, a new diversified investment banking arm of Lockton's business focused on the insurance industry.  Jhaveri was hired based upon his stated experience and expertise to build the business from the ground up,

and Lockton expected Jhaveri to be capable of managing a team, attracting key talent, and establishing client relationships.

3.      Jhaveri fell well short of these expectations.  After nearly two years as CEO, Jhaveri had still not gotten LCM off of the ground or made any meaningful steps towards developing the business.

4.      Jhaveri's underperformance left Lockton with no choice but to terminate him.  As an at-will employee, Jhaveri was subject to termination at Lockton's discretion as set forth in his Employment Agreement.  Recognizing the difficulties faced by registered securities industry professionals who are terminated "for Cause," Lockton elected to terminate Jhaveri without Cause.  This election was more than generous given Jhaveri's poor leadership, including because it afforded Jhaveri the opportunity to receive a substantial severance payment upon his termination.  Jhaveri has refused to accept his termination and rejected his contractual severance payment.  Instead, Jhaveri has made frivolous but damaging accusations of harassment and discrimination and is threatening to bring baseless litigation against Lockton.

5.      Rather than face the consequences of his poor performance, Jhaveri now falsely claims that he was fired because he is Indian American.  This claim is meritless.  LCM operated at all times as an open and inclusive workplace, and none of Jhaveri's ethnicity, race, or religion played any part in Jhaveri's termination.

6.      Jhaveri has no legitimate claim that he was the victim of discrimination.  Nor can he allege that he is entitled to any compensation beyond the severance that was provided to him under his Employment Agreement (which he expressly rejected).  Nevertheless, Jhaveri has threatened to commence costly and damaging legal proceedings against Lockton.  While frivolous, such claims will undoubtedly cause Lockton expense, distraction, and potential

reputational harm at a critical point in time when it is working to reestablish its new business in the wake of two years of mismanagement by Jhaveri.

7.     Lockton has commenced an arbitration before the AAA seeking a declaratory judgment that it did not violate Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the New York State Human Rights Law, the New York Labor Law or the New York City Human Rights Law, and seeking relief for Jhaveri's breach of his agreements with Lockton.[1]

8.     Jhaveri has stated that he plans to "take immediate legal action" and to "commence legal action without further notice."  At the same time, Jhaveri has expressly refused to acknowledge that arbitration is the mandatory forum for his threatened discrimination claim. Lockton thus faces the direct threat of a public lawsuit that could expose Jhaveri's spurious and unfounded claims and potentially disclose Lockton's sensitive and confidential business information, even though Jhaveri expressly agreed to arbitrate "any contest or dispute" between him and Lockton "with respect to [his Employment Agreement]," his "service" to Lockton or the "termination thereof."  Upon information and belief, Jhaveri believes that he is entitled to disregard the clear language of his Employment Agreement because CPLR § 7515 purports to render "null and void" all "mandatory arbitration clauses" for "allegation[s] or claim[s] of discrimination," so long as doing so is not "inconsistent with federal law."

9.     Jhaveri is incorrect.  CPLR § 7515 does not preclude arbitration here.  As a threshold matter, a bar of mandatory arbitration clauses for discrimination claims *is* "inconsistent with federal law."  Specifically, the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms.  Every court in this district that has addressed the

---

[1]   Notwithstanding language in Jhaveri's Employment Agreement requiring the parties to "split the fees of the AAA and the arbitrator," Lockton agrees to pay these fees.

issue has held that the strong federal policy in favor of arbitration set forth in the FAA supersedes CPLR § 7515's purported prohibition of arbitration for discrimination claims. In light of the FAA's clear edict to enforce arbitration agreements as written, CPLR § 7515 does not nullify Jhaveri's obligation to arbitrate his claims. Moreover, CPLR § 7515 did not even become law until *after* Jhaveri signed his Employment Agreement. A plain reading of the provision demonstrates that it is not to be applied retroactively.

10. Jhaveri must arbitrate his claims, not bring them in court. Should he carry out his threat to commence litigation, Lockton will suffer irreparable harm. Not only would Lockton lose the benefit of its bargain and be hauled into a forum it did not agree to, Jhaveri may further damage Lockton by broadcasting his scurrilous and unsubstantiated accusations and disclosing Lockton's sensitive business information. As such, in addition to an order compelling Jhaveri to proceed in a confidential arbitration, Lockton also requests an injunction barring Jhaveri from bringing claims against Lockton in court that fall within the scope of his agreement to arbitrate, as well as temporary relief pending the Court's determination of this application.

## THE PARTIES

11. Lockton Management, LLC is a Delaware limited liability company with its principal place of business in Missouri.

12. LCM HoldCo, LLC is a Delaware limited liability company with its principal place of business in Missouri.

13. Lockton Capital Markets, LLC is a Missouri limited liability company with its principal place of business in New York.

14. Vishal Jhaveri was LCM's Chief Executive Officer from June 11, 2018, until his termination in April 2020. Jhaveri resides in Huntington, New York.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Lockton's Petition necessarily raises a disputed and substantial federal issue:  whether CPLR § 7515's prohibition on "mandatory arbitration clauses" for "any allegation or claim of discrimination," CPLR § 7515(a)(3), conflicts with the FAA's "liberal federal policy favoring arbitration."  *See Tantaros v. Fox News Network, LLC.*, 427 F. Supp. 3d 488, 492, 496 (S.D.N.Y. 2019) (quotation marks and citation omitted) (denying motion for remand after removal and concluding that the issue of "whether § 7515's prohibition on mandatory arbitration clauses for sexual harassment claims conflicts with the FAA" was a "disputed and substantial federal issue" that was "necessarily raised" where the petitioner sought, among other things, "a declaratory judgment that Petitioner cannot be compelled under § 7515 to continue to arbitrate her sexual harassment allegations").

16.     Section 4 of the FAA permits parties who are "aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration" to petition the United States District Court for "an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

17.     The Court has personal jurisdiction over Jhaveri because he is domiciled in New York.  *See, e.g.*, *Bos. Safe Deposit & Tr. Co. v. Morse*, 779 F. Supp. 347, 350 (S.D.N.Y. 1991).

18.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(a) and 28 U.S.C. § 1400 inasmuch as a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and because Jhaveri regularly conducts and solicits business in this District.

## FACTUAL BACKGROUND

19.     Lockton is the world's largest independent insurance brokerage.  Lockton Management is headquartered in Kansas City, Missouri, where many of its top executives and decision-makers are also located.

20.     In 2018, Lockton recruited Jhaveri in the hopes that he could develop a new diversified investment banking arm of its business focused on the insurance industry.  Lockton envisioned that Jhaveri would manage the newly established entity and build out a team.

21.     In June 2018, Lockton formed LCM as its new investment banking vehicle and hired Jhaveri to become the CEO of LCM, awarding him with an extremely generous compensation package.

22.     LCM is based in New York, New York, where Jhaveri also worked.

23.     On June 11, 2018, Jhaveri signed an Executive Employment Agreement (the "Employment Agreement").  Section 1.1 of that Agreement made clear that Jhaveri was employed by Lockton Management "on an 'at will' basis" and that Lockton Management "may terminate [Jhaveri's] employment at any time, with or without cause or advance notice." Employment Agreement § 1.1.

24.     The Employment Agreement contained a broad arbitration clause stating that "[i]f any contest or dispute arises between the parties with respect to [the Employment] Agreement or the service of [Jhaveri] or termination thereof . . . such contest or dispute shall be submitted to binding arbitration in accordance with the rules and procedures of the [AAA] then in effect and the arbitration shall be held in New York, New York." *Id.* § 6.10.

25.     The Employment Agreement also provided that "in the event that the terms of [the Employment] Agreement differ from or are in conflict with [Lockton's] general employment policies or practices, [the Employment] Agreement shall control." *Id*. § 1.4.

26.     The Employment Agreement stated that Jhaveri was to "perform his duties principally out of either his home office or [LCM's] offices in New York, New York," but that he was required to "make such business trips to such places as may be necessary or advisable for the efficient operations of [LCM]." *Id*. § 1.3.

27.     The Employment Agreement provided that, while he was employed, Jhaveri's salary was to be paid by Lockton Management. *Id*. § 2.1.

28.     On June 11, 2018, Jhaveri also signed a Limited Liability Company Agreement of LCM HoldCo, LLC (the "LLC Agreement"), to which LCM Holdco is a party. That agreement requires arbitration before the AAA of "[a]ll claims, controversies or disputes arising under or in connection with [the LLC] Agreement, between or among any of the parties" to the LLC Agreement, "whether sounding in contract or tort." LLC Agreement § 16.12.

29.     Nearly two years after he was hired, Jhaveri had still failed to grow LCM's insurance investment banking business in any meaningful way. After deliberations among Lockton's top executives and decision-makers in Kansas City and New York, in April 2020, Lockton terminated Jhaveri's employment without Cause. Lockton was prepared to pay Jhaveri the generous six-figure severance payment provided under his Employment Agreement, but Jhaveri refused, apparently holding out for an even more favorable deal.

30.     On August 6, 2020, Jhaveri wrote to Lockton claiming that he had been discriminated against because he was Indian American. Lockton vigorously disputes Jhaveri's allegation, which is false and counter to Lockton's inclusive company culture and values.

31.     Jhaveri has stated that he plans to "take immediate legal action" and to "commence legal action without further notice," and has expressly refused to acknowledge that arbitration is the mandatory forum for his threatened discrimination claim.  Upon information and belief, he does not believe his dispute with Lockton is arbitrable in light of CPLR § 7515's language purporting to render "null and void" all "mandatory arbitration clauses" for "allegation[s] or claim[s] of discrimination."

32.     Jhaveri is incorrect.  CPLR § 7515 provides that "*[e]xcept where inconsistent with federal law*," contractual provisions that mandate arbitration of discrimination claims "shall be null and void." CPLR § 7515(b)(iii) (emphasis added).  But, as every court in this district to address this issue has held, CPLR § 7515's purported prohibition of mandatory arbitration clauses for discrimination claims *is* inconsistent with federal law, specifically the FAA. *See Latif v. Morgan Stanley & Co. LLC*, 2019 WL 2610985, at *3–4 (S.D.N.Y. June 26, 2019) (Cote, J.) (granting motion to compel arbitration of employment discrimination, hostile work environment, and retaliation claims and holding that CPLR § 7515 does not "displace[]" the FAA's "strong presumption that arbitration agreements are enforceable" and "cannot overcome the FAA's command" that an arbitration agreement requiring arbitration of those claims be enforced); *White v. WeWork Companies, Inc.*, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020) (McMahon, C.J.) (granting motion to compel arbitration of race and gender discrimination, retaliation, and equal pay violation claims, noting that the United States Supreme Court "has specifically forbidden state legislatures from creating exceptions to the FAA like the one embodied in CPLR § 7515," and holding that "CPLR § 7515 is displaced by the FAA").

33. Moreover, CPLR § 7515 did not even become law until *after* Jhaveri signed his Employment Agreement, and a plain reading of the provision demonstrates that it is not to be applied retroactively.

34. On September 17, 2020, Lockton filed an arbitration with the AAA seeking a declaratory judgment that it did not violate Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the New York State Human Rights Law, the New York Labor Law or the New York City Human Rights Law. LCM Holdco also brought a claim for breach of contract against Jhaveri in connection with his failure to comply with certain of his obligations under the LLC Agreement.

35. Jhaveri has stated that he plans to "take immediate legal action" and to "commence legal action without further notice." At the same time, Jhaveri has expressly refused to acknowledge that arbitration is the mandatory forum for his threatened discrimination claim.

36. Absent immediate injunctive relief, Lockton will suffer permanent irreparable harm. If Jhaveri carries out his threat to file a lawsuit, Lockton will be deprived of its right to arbitrate and the benefit of its bargain. Moreover, the parties agreed to resolve their disputes in a private arbitral forum and if Jhaveri violates that agreement, he may further irreparably damage Lockton by publicizing his unfounded and specious allegations and improperly disclosing confidential and sensitive information belonging to Lockton.

37. For the above reasons, Lockton requests an order compelling Jhaveri to proceed in a confidential arbitration, a permanent injunction barring Jhaveri from bringing claims against Lockton in court that fall within the scope of his agreement to arbitrate, and a temporary restraining order barring Jhaveri from doing so pending the Court's determination of this application.

## COUNT I
## DECLARATORY JUDGMENT

38.     Lockton repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

39.     Jhaveri has falsely accused Lockton of discriminating against him on account of his race, national origin, and/or religion in connection with his employment with Lockton and the termination thereof in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Executive Law §§ 290, et seq., the New York Labor Law, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.*

40.     Jhaveri's Employment Agreement contains a broad arbitration clause stating that "[i]f any contest or dispute arises between the parties with respect to [the Employment] Agreement or the service of [Jhaveri] or termination thereof . . . such contest or dispute shall be submitted to binding arbitration in accordance with the rules and procedures of the [AAA] then in effect and the arbitration shall be held in New York, New York."  Employment Agreement § 6.10.

41.     The LLC Agreement, to which Jhaveri and LCM Holdco are parties, requires arbitration before the AAA of "[a]ll claims, controversies or disputes arising under or in connection with [the LLC] Agreement, between or among any of the parties" to the LLC Agreement, "whether sounding in contract or tort."  LLC Agreement § 16.12.

42.     On September 17, 2020, Lockton filed an arbitration with the AAA seeking a declaratory judgment that it did not violate Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the New York State Human Rights Law, the New York

Labor Law or the New York City Human Rights Law, and seeking relief for Jhaveri's breach of his agreements with Lockton.

43.     Jhaveri has stated that he plans to "take immediate legal action" and to "commence legal action without further notice" and has expressly refused to acknowledge that arbitration is the mandatory forum for his threatened discrimination claim.  Upon information and belief, Jhaveri believes that arbitration is not required because of CPLR § 7515's language purporting to render "null and void" all "mandatory arbitration clauses" for "allegation[s] or claim[s] of discrimination."

44.     CPLR § 7515's purported prohibition of mandatory arbitration clauses for discrimination claims is inconsistent with the FAA, and accordingly does not bar arbitration of Jhaveri's claims.

45.     Moreover, CPLR § 7515 did not even become law until *after* Jhaveri signed his Employment Agreement, and a plain reading of the provision demonstrates that it is not to be applied retroactively.

46.     As such, Jhaveri must arbitrate his claims in the AAA proceeding that Lockton initiated, and cannot bring his claims in court.

47.     The Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202.

48.     The Court is authorized to enter a declaratory judgment where a justiciable controversy exists regardless of whether other relief is available.

49.     A justiciable controversy exists concerning whether (1) CPLR § 7515's prohibition of "mandatory arbitration clauses" for "any allegation or claim of discrimination" is preempted by the FAA or is otherwise inconsistent with federal law such that it does not apply to

Jhaveri's allegations against Lockton; (2) CPLR § 7515 precludes arbitration of this dispute; and (3) Jhaveri must participate in the AAA arbitration brought by Lockton.

50.     Lockton is entitled to a declaratory judgment that (1) CPLR § 7515's prohibition of "mandatory arbitration clauses" for "any allegation or claim of discrimination" is preempted by the FAA or is otherwise inconsistent with federal law such that it does not apply to Jhaveri's allegations against Lockton; (2) CPLR § 7515 does not preclude arbitration of this dispute; and (3) Jhaveri must participate in the AAA arbitration brought by Lockton.

## COUNT II
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION IN AID OF ARBITRATION

51.     Lockton repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth here.

52.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court may issue injunctions in aid of arbitration.  CPLR § 7502(c), which the Court may invoke pursuant to Rule 64 of the Federal Rules of Civil Procedure, also provides the authority to issue "a preliminary injunction in connection with an arbitrable controversy . . . upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."

53.     An injunction is warranted here to maintain the *status quo* and to prevent irreparable injury to Lockton.

54.     Lockton has shown a strong likelihood of success on the merits and actual success on the merits.  As described above, Jhaveri's claims fall within the ambit of the Employment Agreement's valid and binding arbitration clause, and CPLR § 7515 does not bar arbitration of those claims.  Accordingly, Jhaveri must participate in the AAA arbitration initiated by Lockton.

55. Without injunctive relief, Lockton will suffer permanent irreparable harm. If Jhaveri files litigation, Lockton will be deprived of its right to arbitrate and the benefit of its bargain. Moreover, the parties agreed to resolve their disputes in a private arbitral forum and if Jhaveri violates that agreement, he may further irreparably damage Lockton by publicizing his unfounded and specious allegations and improperly disclosing confidential and sensitive information belonging to Lockton.

56. The balance of equities greatly weighs in favor of injunctive relief. Lockton will be permanently damaged and lose the benefit of its bargain if Jhaveri files litigation. In contrast, Jhaveri will suffer no prejudice if an injunction is entered. To the contrary, he will simply be held to the agreement *he already made* to arbitrate his disputes with Lockton.

57. The public interest is best served by enforcing the parties' contractual agreement to arbitrate their disputes and enjoining Jhaveri from violating that agreement. The public has an interest in seeing contractual parties abide by their bargained-for obligations under their agreements, and entering an injunction in aid of arbitration would be consistent with this nation's policy in favor of arbitral dispute resolution.

58. Lockton is accordingly entitled to an immediate and permanent injunction of Jhaveri and his counsel, agents, or anyone acting on his behalf from pursuing claims against Lockton for alleged violations of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the New York State Human Rights Law, the New York Labor Law, the New York City Human Rights Law, or any other claims in connection with or arising out of Jhaveri's employment by Lockton or the termination thereof, outside of arbitration.

59. No prior proceeding has been filed for the relief requested herein or for like relief.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Petitioners pray that an order be entered:

(1) declaring that CPLR § 7515's prohibition of "mandatory arbitration clauses" for "any allegation or claim of discrimination" is preempted by the FAA or is otherwise inconsistent with federal law such that it does not apply to Jhaveri's allegations against Lockton;

(2) declaring that CPLR § 7515 does not preclude arbitration of this dispute;

(3) requiring Jhaveri to participate in the AAA arbitration brought by Lockton;

(4) immediately and permanently enjoining Jhaveri and his counsel, agents, or anyone acting on his behalf from pursuing claims against Lockton for alleged violations of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the New York State Human Rights Law, the New York Labor Law, the New York City Human Rights Law, or any other claims in connection with or arising out of Jhaveri's employment by Lockton or the termination thereof, outside of arbitration; and

(5) granting all other relief that may be appropriate.

Dated: September 17, 2020
      New York, New York

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  */s/ Michael B. Carlinsky*
      Michael B. Carlinsky
      Jennifer J. Barrett
      Ryan A. Rakower
      51 Madison Avenue, 22nd Floor
      New York, NY 10010
      Telephone:  (212) 849-7000
      michaelcarlinsky@quinnemanuel.com
      jenniferbarrett@quinnemanuel.com
      ryanrakower@quinnemanuel.com

      *Attorneys for Petitioners Lockton*
      *Management, LLC, LCM Holdco, LLC, and*
      *Lockton Capital Markets, LLC*