UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOCKTON MANAGEMENT, LLC, LCM HOLDCO, LLC, AND LOCKTON CAPITAL MARKETS, LLC,

        PETITIONERS,

  -AGAINST-

VISHAL JHAVERI,

        RESPONDENT.

1:20-CV-07671

---

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' APPLICATION FOR AN INJUNCTION AND TEMPORARY RESTRAINING ORDER AND TO COMPEL ARBITRATION**

Dated: September 17, 2020

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Michael B. Carlinsky
Jennifer J. Barrett
Ryan A. Rakower
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
ryanrakower@quinnemanuel.com
*Attorneys for Petitioners Lockton Management, LLC, LCM Holdco, LLC, and Lockton Capital Markets, LLC*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ...................................................................................................................1

Jurisdiction .....................................................................................................................................3

Factual Background .......................................................................................................................4

Argument .......................................................................................................................................6

I.   Legal Standards .................................................................................................................6

II.  Jhaveri's Dispute With Lockton Must Be Arbitrated .........................................................7

III. Jhaveri Should Be Immediately And Permanently Enjoined From Pursuing Claims Outside Of Arbitration ...............................................................................13

    A.  Lockton Succeeds On The Merits ........................................................................13

    B.  Lockton Would Suffer Irreparable Harm If An Injunction Is Not Granted ..........13

    C.  The Balance Of Hardships Favors Lockton .........................................................14

    D.  An Injunction Would Serve The Public Interest ..................................................14

IV.  The Court Should Not Require Lockton To Post A Bond In Connection With This Application ......................................................................................................15

Conclusion ...................................................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*AIM Int'l Trading LLC v. Valcucine SpA.*,
   188 F. Supp. 2d 384 (S.D.N.Y. 2002) ................................................................. 7, 13

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ...................................................................................................6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ...................................................................................................9

*Bos. Safe Deposit & Tr. Co. v. Morse*,
   779 F. Supp. 347 (S.D.N.Y. 1991) .............................................................................4

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) .....................................................................................................9

*Credit Suisse Sec. (USA) LLC v. Ebling*,
   2006 WL 3457693 (S.D.N.Y. Nov. 27, 2006) .........................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ...................................................................................................6

*Doctor's Assocs., Inc. v. Distajo*,
   107 F.3d 126 (2d Cir. 1997) ....................................................................................15

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) .................................................................................................11

*Hous. Works, Inc. v. Safir*,
   101 F. Supp. 2d 163 (S.D.N.Y. 2000) ................................................................. 7, 13

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ...............................................................................................9

*Latif v. Morgan Stanley & Co. LLC*,
   2019 WL 2610985 (S.D.N.Y. June 26, 2019) ............................................... 8, 10, 11

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012) .................................................................................................15

*Miller v. Cont'l Ins. Co.*,
   40 N.Y.2d 675 (1976) ..............................................................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .......................................................................................................6

*Murphy v. Citigroup Glob. Markets, Inc.*,
   125 N.Y.S.3d 560 (1st Dep't. 2020) ........................................................................12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*,
   88 F.3d 129 (2d Cir. 1996) ........................................................................................6

*Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*,
    2016 WL 4204066 (S.D.N.Y. Aug. 4, 2016) ........................................................................... 13

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*,
    2020 WL 3961988 (N.Y. Sup. Ct., N.Y. Cty. July 10, 2020) ..................................... 10, 11, 12

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*,
    754 F. Supp. 2d 616 (S.D.N.Y. 2010) ............................................................................... 7, 14

*Rodriguez v. Perez*,
    2020 WL 888485 (N.Y. Sup. Ct., N.Y. Cty. Feb. 19, 2020) .................................................. 12

*Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*,
    2003 WL 22909149 (S.D.N.Y. Dec. 10, 2003) ................................................................ 7, 13

*Tantaros v. Fox News Network, LLC.*,
    427 F. Supp. 3d 488 (S.D.N.Y. 2019) ..................................................................................... 3

*UBS Sec. LLC v. Prowse*,
    2020 WL 433859 (S.D.N.Y. Jan. 27, 2020) ........................................................................... 13

*White v. WeWork Companies, Inc.*,
    2020 WL 3099969 (S.D.N.Y. June 11, 2020) ............................................................. 8, 10, 11

## **Statutes**

9 U.S.C. § 2 ................................................................................................................................ 9, 10

9 U.S.C. § 4 ..................................................................................................................................... 4

28 U.S.C. § 1331 ............................................................................................................................. 3

CPLR § 7515 ........................................................................................................................ *passim*

Fed. R. Civ. P. 65(c) ..................................................................................................................... 15

Petitioners Lockton Management, LLC ("Lockton Management"), LCM HoldCo, LLC ("LCM Holdco"), and Lockton Capital Markets, LLC ("LCM," and together with Lockton Management and LCM Holdco, "Lockton") submit this memorandum of law in support of their application for an injunction and temporary restraining order and to compel arbitration.

## PRELIMINARY STATEMENT

Vishal Jhaveri, has threatened to bring litigation against Lockton in response to being terminated earlier this year. In 2018, Lockton hired Vishal Jhaveri to become the Chief Executive Officer of LCM, a new diversified investment banking arm of Lockton's business focused on the insurance industry. Jhaveri was hired based upon his stated experience and expertise to build the business from the ground up, and Lockton expected Jhaveri to be capable of managing a team, attracting key talent, and establishing client relationships. Jhaveri fell well short of these expectations, and after nearly two years as CEO, Jhaveri had still not gotten LCM off of the ground or made any meaningful steps towards developing the business. Lockton terminated Jhaveri's employment under the terms of his Employment Agreement in April 2020.

Unwilling to accept the consequences of his poor performance, Jhaveri has made frivolous but damaging accusations of harassment and discrimination and is threatening to bring baseless litigation against Lockton. Jhaveri now falsely claims that he was fired because he is Indian American. This claim is meritless. LCM operated at all times as an open and inclusive workplace, and none of Jhaveri's ethnicity, race, or religion played any part in Jhaveri's termination.

Nevertheless, Jhaveri has threatened to commence costly and damaging legal proceedings against Lockton. Lockton has therefore commenced an arbitration before the American Arbitration Association ("AAA") seeking a declaratory judgment that it did not violate Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the New York

1

State Human Rights Law, the New York Labor Law, or the New York City Human Rights Law, and seeking relief for Jhaveri's breach of his agreements with Lockton. Jhaveri has stated that he plans to "take immediate legal action" and to "commence legal action without further notice." At the same time, Jhaveri has expressly refused to acknowledge that arbitration is the mandatory forum for his threatened discrimination claim. Lockton thus faces the direct threat of a public lawsuit that could expose Jhaveri's spurious and unfounded claims and potentially disclose sensitive and confidential business information belonging to Lockton, even though Jhaveri expressly agreed to arbitrate "any contest or dispute" between him and Lockton "with respect to [his Employment Agreement]," his "service" to Lockton or the "termination thereof." Upon information and belief, Jhaveri believes he is entitled to disregard the clear language of his Employment Agreement because CPLR § 7515 purports to render "null and void" all "mandatory arbitration clauses" for "allegation[s] or claim[s] of discrimination," so long as doing so is not "inconsistent with federal law."

Jhaveri is incorrect. CPLR § 7515 does not preclude arbitration here. As a threshold matter, a bar of mandatory arbitration clauses for discrimination claims *is* "inconsistent with federal law." Specifically, the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms. Every court in this district that has addressed the issue has held that the strong federal policy in favor of arbitration set forth in the FAA supersedes CPLR § 7515's purported prohibition of arbitration for discrimination claims. In light of the FAA's clear edict to enforce arbitration agreements as written, CPLR § 7515 does not nullify Jhaveri's commitment to arbitrate his claims. Moreover, CPLR § 7515 did not even become law until *after* Jhaveri signed his Employment Agreement. A plain reading of the provision demonstrates that it is not to be applied retroactively.

Jhaveri must arbitrate his claims, not bring them in court. Should he commence litigation, Lockton will suffer irreparable harm. Not only would Lockton lose the benefit of its bargain and be hauled into a forum it did not agree to, Jhaveri may further damage Lockton by broadcasting his scurrilous and unsubstantiated accusations and disclosing Lockton's sensitive business information. Accordingly, in addition to an order compelling Jhaveri to proceed in a confidential arbitration, Lockton also requests an injunction barring Jhaveri from bringing claims against Lockton in court that fall within the scope of his agreement to arbitrate, as well as temporary relief pending the Court's determination of this application.

## JURISDICTION

This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Lockton's Petition necessarily raises a disputed and substantial federal issue: whether CPLR § 7515's prohibition on "mandatory arbitration clauses" for "any allegation or claim of discrimination," CPLR § 7515(a)(3), conflicts with the FAA's "liberal federal policy favoring arbitration." *See Tantaros v. Fox News Network, LLC.*, 427 F. Supp. 3d 488, 492, 496 (S.D.N.Y. 2019) (quotation marks and citation omitted) (denying motion for remand after removal and concluding that the issue of "whether § 7515's prohibition on mandatory arbitration clauses for sexual harassment claims conflicts with the FAA" was a "disputed and substantial federal issue" that was "necessarily raised" where the petitioner sought, among other things, "a declaratory judgment that Petitioner cannot be compelled under § 7515 to continue to arbitrate her sexual harassment allegations"); *see also* Pet. ¶ 50 (seeking a declaration that "CPLR § 7515's prohibition of 'mandatory arbitration clauses' for 'any allegation or claim of discrimination' is preempted by the FAA or is otherwise inconsistent with federal law such that it does not apply to Jhaveri's allegations against Lockton"). Section 4 of the FAA permits parties who are "aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration" to petition

the United States District Court for "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Court has personal jurisdiction over Jhaveri because he is domiciled in New York. *See, e.g.*, *Bos. Safe Deposit & Tr. Co. v. Morse*, 779 F. Supp. 347, 348 (S.D.N.Y. 1991).

## FACTUAL BACKGROUND

Lockton is the world's largest independent insurance brokerage. Pet. ¶ 19. Lockton Management is headquartered in Kansas City, Missouri, where many of its top executives and decision-makers are also located. *Id*.

In 2018, Lockton recruited Jhaveri in the hopes that he could develop a new diversified investment banking arm of its business focused on the insurance industry. Pet. ¶ 20. Lockton envisioned that Jhaveri would manage the newly established entity and build out a team. *Id*.

In June 2018, Lockton formed LCM as its new investment banking vehicle and hired Jhaveri to become the CEO of LCM, awarding him with an extremely generous compensation package. Pet. ¶ 21. LCM is based in New York, New York, where Jhaveri also worked. Pet. ¶ 22.

When he was hired, Jhaveri signed an Employment Agreement. Pet. ¶ 23. Section 1.1 of that Agreement made clear that Jhaveri was employed by Lockton Management "on an 'at will' basis" and that Lockton Management "may terminate [Jhaveri's] employment at any time, with or without cause or advance notice." *Id*. (quoting Employment Agreement § 1.1). The agreement contained a broad arbitration clause stating that "[i]f any contest or dispute arises between the parties with respect to [the Employment] Agreement or the service of [Jhaveri] or termination thereof . . . such contest or dispute shall be submitted to binding arbitration in accordance with the rules and procedures of the [AAA] then in effect and the arbitration shall be held in New York, New York." Pet. ¶ 24 (quoting Employment Agreement § 6.10). The

4

Employment Agreement also provided that "in the event that the terms of [the Employment] Agreement differ from or are in conflict with [Lockton's] general employment policies or practices, [the Employment] Agreement shall control." Pet. ¶ 25 (quoting Employment Agreement § 1.4). The Employment Agreement stated that Jhaveri was to "perform his duties principally out of either his home office or [LCM's] offices in New York, New York," but that he was required to "make such business trips to such places as may be necessary or advisable for the efficient operations of [LCM]." Pet. ¶ 26 (quoting Employment Agreement § 1.3). The agreement provided that, while he was employed, Jhaveri's salary was to be paid by Lockton Management. Pet. ¶ 27 (citing Employment Agreement § 2.1).

On June 11, 2018, Jhaveri also signed a Limited Liability Company Agreement of LCM HoldCo, LLC (the "LLC Agreement"), to which LCM Holdco is a party. Pet. ¶ 28. That agreement required arbitration before the AAA of "[a]ll claims, controversies or disputes arising under or in connection with [the LLC] Agreement, between or among any of the parties" to the LLC Agreement, "whether sounding in contract or tort." *Id*. (quoting LLC Agreement § 16.12).

Nearly two years after he was hired, Jhaveri had still failed to grow LCM's insurance investment banking business in any meaningful way. Pet. ¶ 29. In April 2020, Lockton terminated Jhaveri's employment without Cause. *Id*. Jhaveri ultimately refused to accept the generous severance payment from Lockton provided for under his Employment Agreement. *Id*. On August 6, 2020, Jhaveri wrote to Lockton claiming that he had been discriminated against because he was Indian American. Pet. ¶ 30. Lockton vigorously disputes Jhaveri's allegation, which is false and counter to Lockton's inclusive company culture and values. *Id*.

Jhaveri has stated that he plans to "take immediate legal action" and to "commence legal action without further notice," and has expressly refused to acknowledge that arbitration is the

5

mandatory forum for his threatened discrimination claim. Pet. ¶ 31. Jhaveri apparently believes that his dispute with Lockton is not arbitrable in light of CPLR § 7515's language purporting to render "null and void" all "mandatory arbitration clauses" for "allegation[s] or claim[s] of discrimination." *Id*. On September 17, 2020, Lockton filed an arbitration with the AAA seeking a declaratory judgment that it did not violate Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the New York State Human Rights Law, the New York Labor Law, or the New York City Human Rights Law, and seeking relief for Jhaveri's breach of his agreements with Lockton. Pet. ¶ 34.

**ARGUMENT**

**I.    LEGAL STANDARDS**

In resolving a motion to compel arbitration, the Court must determine "(1) whether there exists a valid agreement to arbitrate" and "(2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). Where a "contract contains an arbitration clause, there is a presumption of arbitrability." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[A]ny doubts" concerning the arbitrability of a contract "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Where a dispute is covered by a valid arbitration agreement, the Court must compel arbitration of the dispute. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)).

Courts resolving a motion for a preliminary injunction in aid of arbitration look to whether the movant has shown "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation." *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, 2003 WL 22909149, at *3 (S.D.N.Y. Dec. 10, 2003) (quotation marks and citation omitted). Courts considering requests for a preliminary injunction also consider the "balance of hardships"—though only where "the balance of hardships tips in the movant's favor"—and aim to "confirm that granting injunctive relief would not disserve the public interest." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 625–26 (S.D.N.Y. 2010) (quotation marks and citations omitted). "The standard[s] for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." *AIM Int'l Trading LLC v. Valcucine SpA.*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002). "The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the moving party must show actual success on the merits." *Hous. Works, Inc. v. Safir*, 101 F. Supp. 2d 163, 167 (S.D.N.Y. 2000).

## II.   JHAVERI'S DISPUTE WITH LOCKTON MUST BE ARBITRATED

Jhaveri's Employment Agreement is unambiguous: Jhaveri agreed to arbitrate any "contest or dispute . . . between" him and Lockton "with respect to [the Employment] Agreement or the service of [Jhaveri] or termination thereof." Pet. ¶ 8 (quoting Employment Agreement § 6.10). There is no question that Jhaveri's allegations of purported discrimination relate to his

"service" to Lockton or his "termination."  Accordingly, Lockton's declaratory judgment claims regarding Jhaveri's allegations were properly brought before the AAA.[1]

Jhaveri cannot avoid the clear language of the Employment Agreement's arbitration clause.  His only out is to argue that the clause itself is invalid.  Upon information and belief, Jhaveri believes that CPLR § 7515 invalidates the provision.  Jhaveri is wrong.  CPLR § 7515 provides that "*[e]xcept where inconsistent with federal law*," contractual provisions that mandate arbitration of discrimination claims "shall be null and void." CPLR § 7515(b)(iii) (emphasis added).  But, as every court in this district to address this issue has held, CPLR § 7515's purported prohibition of mandatory arbitration clauses for discrimination claims *is* inconsistent with federal law, specifically the FAA.  *See Latif v. Morgan Stanley & Co. LLC*, 2019 WL 2610985, at *3–4 (S.D.N.Y. June 26, 2019) (Cote, J.) (granting motion to compel arbitration of employment discrimination, hostile work environment, and retaliation claims and holding that CPLR § 7515 does not "displace[]" the FAA's "strong presumption that arbitration agreements are enforceable" and "cannot overcome the FAA's command" that an arbitration agreement requiring arbitration of those claims be enforced); *White v. WeWork Companies, Inc.*, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020) (McMahon, C.J.) (granting motion to compel arbitration of race and gender discrimination, retaliation, and equal pay violation claims, noting that the United States Supreme Court "has specifically forbidden state legislatures from creating

---

[1]   LCM Holdco has also brought a claim for breach of contract against Jhaveri in connection with his failure to comply with certain of his obligations under the LLC Agreement.  Pet. ¶ 34.  That claim falls squarely within the scope of that agreement's arbitration clause, which requires arbitration of "[a]ll claims, controversies or disputes arising under or in connection with [the LLC] Agreement, between or among any of the parties" to the LLC Agreement, "whether sounding in contract or tort."  Pet. ¶ 41 (quoting LLC Agreement § 16.12).

8

exceptions to the FAA like the one embodied in CPLR § 7515," and holding that "CPLR § 7515 is displaced by the FAA").

The FAA, which reflects "a liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citation omitted), requires that agreements to arbitrate "*shall* be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2 (emphasis added). The FAA mandates that courts "enforce covered arbitration agreements according to their terms," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019), and "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: [t]he conflicting rule is displaced by the FAA," *AT&T*, 563 U.S. at 341.

The FAA applies here. The FAA covers any agreement "evidencing a transaction involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" reflects "the broadest permissible exercise of Congress' Commerce Clause power" and "encompasses a wider range of transactions than those actually . . . within the flow of interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quotation marks and citations omitted). Jhaveri's Employment Agreement evidences numerous transactions that involve and affect interstate commerce. For starters, the Agreement is between, among others, Jhaveri, who lived and worked in New York, and Lockton Management, a Delaware limited liability company based out of Kansas City, Missouri. Pet. ¶¶ 11, 14. Jhaveri's salary was paid out of Missouri by Lockton Management, and many of Lockton's key decision-makers and leaders to whom Jhaveri reported were located in Missouri. Pet. ¶¶ 19, 27. And the Employment Agreement also contemplated that Jhaveri would travel around the country to develop LCM's insurance investment banking business and required Jhaveri to "make such business trips to such places as may be necessary or

advisable for the efficient operations of [LCM]." Pet. ¶ 26 (quoting Employment Agreement § 1.3). The Employment Agreement evidences "transaction[s] involving commerce" and is accordingly within the broad purview of the FAA. 9 U.S.C. § 2.

Since the FAA applies, its "strong presumption that arbitration agreements are enforceable" must preempt any instruction by CPLR § 7515 to disregard agreements to arbitrate discrimination claims. *Latif*, 2019 WL 2610985, at *3-4; *see also White*, 2020 WL 3099969, at *5. Lockton is aware of only one case applying CPLR § 7515 to bar arbitration of discrimination claims notwithstanding the FAA's clear requirement that arbitration agreements must be enforced as written. In *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 2020 WL 3961988 (N.Y. Sup. Ct., N.Y. Cty. July 10, 2020), the New York Supreme Court denied a motion to compel arbitration of sexual harassment and retaliation claims, citing CPLR § 7515's prohibition of mandatory arbitration clauses of "any allegation or claim of discrimination." *Newton* is inapposite.

First, the court in *Newton* found that the FAA did not apply because the claims at issue involved purely intrastate activity. *See id.* at *1 ("[A]ll factual instances alleged by Ms. Newton occurred in defendant's offices in New York City."), *4 ("[B]ecause the instant case involves purely intrastate activity, the FAA cannot reasonably be said to apply."). Here, though Jhaveri worked in New York, Jhaveri's employer, Lockton Management, was located in Missouri, and many of Lockton's decision-makers responsible for deciding to terminate his employment were based in Missouri. Pet. ¶¶ 11, 14, 29. Much of the alleged conduct that Jhaveri complains of is necessarily interstate and, as set forth above, the FAA applies squarely to Jhaveri's agreement to arbitrate any claims arising out of his employment by Lockton.

Next, the court in *Newton* focused heavily on the fact that the plaintiff's claims of harassment and hostile work environment were not "economic in nature" and noted that was a "critical distinction" from a situation where an employee suffers a "loss . . . of his job[] and the salary and benefits that go with it." *Newton*, 2020 WL 3961988, at *6. The court accordingly found that the plaintiff was differently situated from the claimant in *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002), whose claim for wrongful discharge on account of his disability was arbitrable under the FAA. *See Newton*, 2020 WL 3961988, at *6. Here, Jhaveri's allegations *do* center around the "loss . . . of his job[] and the salary and benefits that go with it," and accordingly *are* "economic in nature" and fall within "the FAA's policy of encouraging arbitration regarding the economic incidents of contractual relationships." *Id.*

Additionally, the *Newton* court also based its holding on the fact that the employer's "Non-Discrimination and Anti-Harassment Policy" detailed various "avenues" through which employees could "lodge complaints," and included the express option to "file a complaint in state court." *Id.* at *13. The court held that by including that language in its policy, the employer "nullified" the arbitration agreement by its "own accord." *Id.* at *8. Lockton has no equivalent language in any employee policy permitting Jhaveri to file claims for discrimination in court. Moreover, the Employment Agreement expressly states that "in the event that the terms of [the Employment] Agreement differ from or are in conflict with [Lockton's] general employment policies or practices, [the Employment] Agreement shall control." Pet. ¶ 25 (quoting Employment Agreement § 1.4).

Put simply, *Newton* does not apply. This Court should instead follow the reasoning in *Latif* and *White* and hold that CPLR § 7515's language purporting to preclude arbitration of

11

discrimination claims conflicts with the FAA and accordingly does not nullify the Employment Agreement's binding arbitration clause.

Lastly, CPLR § 7515 does not apply for the additional reason that it was not even enacted until *after* Jhaveri's Employment Agreement was signed. The Employment Agreement was executed on June 11, 2018. Pet. ¶ 23. CPLR § 7515 was not enacted until July 11, 2018, and even then, it only covered arbitration clauses governing "unlawful discriminatory practice[s] based on sexual harassment." CPLR § 7515(a)(3) (as of July 11, 2018). CPLR § 7515 was only amended to more broadly cover other claims of "discrimination" on October 11, 2019, more than a year after Jhaveri signed his Employment Agreement. CPLR § 7515(a)(3) (as of October 11, 2018). A "plain reading" of CPLR § 7515 demonstrates that the "section . . . is not to be applied retroactively." *Rodriguez v. Perez*, 2020 WL 888485 (N.Y. Sup. Ct., N.Y. Cty. Feb. 19, 2020) (holding that an arbitration agreement signed March 7, 2017 was not subject to CPLR § 7515 and ordering the parties to arbitrate claims for employment discrimination and retaliation); *see also Murphy v. Citigroup Glob. Markets, Inc.*, 125 N.Y.S.3d 560, 561 & n.1 (1st Dep't. 2020) (holding that the plaintiff "failed to make any showing in support of the non-arbitrability" of his discrimination claims "at the time they were decided," noting that even though "[e]ffective October 11, 2019, well after the facts of plaintiff's discrimination claims were adjudicated in arbitration, the New York State Discrimination Laws were amended to prospectively prohibit mandatory arbitration clauses, except where inconsistent with federal law," "[t]here was no such prohibition in effect at the time of plaintiff's arbitration").[2] The fact that CPLR § 7515 postdates

---

[2] Although the New York Supreme Court in *Newton* found CPLR § 7515 to apply retroactively, *see Newton*, 2020 WL 3961988, at *7, it did so *before* the New York Appellate Division, First Department entered its decision in *Murphy* holding that CPLR § 7515's prohibitions were not "in effect" before the law was enacted, *Murphy*, 125 N.Y.S.3d at 561 n.1.

the Employment Agreement further supports Lockton's position that CPLR § 7515 is inapplicable.

For the above reasons, the Court should enforce the plain language of the Employment Agreement and compel Jhaveri to arbitrate his dispute with Lockton before the AAA.

### III. JHAVERI SHOULD BE IMMEDIATELY AND PERMANENTLY ENJOINED FROM PURSUING CLAIMS OUTSIDE OF ARBITRATION

#### A. Lockton Succeeds On The Merits

As set forth above in Section II *supra*, Jhaveri's dispute with Lockton belongs in arbitration, not court. Lockton has shown both a "likelihood of success on the merits" sufficient to merit a temporary restraining order and preliminary injunction, *Suchodolski Assocs.*, 2003 WL 22909149, at *3, *see also AIM Int'l Trading LLC*, 188 F. Supp. 2d at 386, and "actual success on the merits" such that a permanent injunction is justified, *Hous. Works*, 101 F. Supp. 2d at 167. The Court should immediately enjoin Jhaveri from filing litigation or taking any other steps to subvert the plain language of his agreement to arbitrate.

#### B. Lockton Would Suffer Irreparable Harm If An Injunction Is Not Granted

Absent injunctive relief, Lockton will suffer immediate and permanent irreparable harm. Specifically, if Jhaveri brings his allegations in court, Lockton will be deprived of its right to arbitrate and the benefit of its bargain. *See UBS Sec. LLC v. Prowse*, 2020 WL 433859, at *7 (S.D.N.Y. Jan. 27, 2020) ("[L]osing the ability to enforce an arbitration agreement is a form of irreparable harm."); *see also Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*, 2016 WL 4204066, at *5 (S.D.N.Y. Aug. 4, 2016) (granting motion to compel arbitration and enjoining respondent from pursuing a state court action in California, noting that "it is well established that losing the ability to enforce an arbitration agreement is a form of irreparable harm."); *Credit Suisse Sec. (USA) LLC v. Ebling*, 2006 WL 3457693, at *3 (S.D.N.Y. Nov. 27,

13

2006) ("Without a preliminary injunction, the harm that Petitioner seeks to address via arbitration will occur before the arbitrator can render a decision, and Petitioner will lose its right to meaningfully resolve these employment disputes via arbitration. This constitutes irreparable harm."). Moreover, the parties agreed to resolve their disputes in a private arbitral forum. If Jhaveri violates that agreement, he may further irreparably damage Lockton by publicizing his unfounded and specious allegations and improperly disclosing confidential and sensitive information belonging to Lockton. The Court should grant Lockton's request for an injunction to avoid irreparable harm from occurring.

### C. The Balance Of Hardships Favors Lockton

The balance of hardships greatly weighs in favor of injunctive relief. As set forth above, Lockton will be permanently damaged and lose the benefit of its bargain if Jhaveri files litigation. In contrast, Jhaveri will suffer no prejudice if an injunction is entered. To the contrary, he will simply be held to the agreement *he already made* to arbitrate his disputes with Lockton. Since Lockton has already initiated an AAA proceeding, Jhaveri has a forum available to him that is ready and able to hear his claims at a moment's notice. The balance of hardships overwhelmingly favors Lockton here.

### D. An Injunction Would Serve The Public Interest

Finally, the public interest is best served by enforcing the parties' contractual agreement to arbitrate their disputes and enjoining Jhaveri from violating that agreement. *See Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d at 626 ("All that the Court is being asked to do is to enforce the parties' bargained-for right to arbitrate any disputes that arise under the Agreement. The public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense."); *see also Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 679 (1976) ("[T]he usual and most important function of

courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy." (quotation marks and citation omitted)). Moreover, the "emphatic" national policy "in favor of arbitral dispute resolution" reflected in the FAA would be particularly well-served by enforcing the arbitration clause in the Employment Agreement and precluding Jhaveri from taking actions contrary to it. *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012).

## IV.  THE COURT SHOULD NOT REQUIRE LOCKTON TO POST A BOND IN CONNECTION WITH THIS APPLICATION

Although Federal Rule of Civil Procedure 65(c) allows a court to require a movant to post a "security" before a court grants preliminary relief, Fed. R. Civ. P. 65(c), the Court has "wide discretion . . . to dispense with the bond requirement where there has been no proof of likelihood of harm," *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (quotation marks and citation omitted). Jhaveri will suffer zero harm if the Court grants Lockton's requested injunction. All that the injunction will do is ensure that Jhaveri honors his contractual commitment to arbitrate his disputes with Lockton. A bond is not necessary here, and the Court should exercise its discretion to dispense with any security requirement.

## CONCLUSION

For the above reasons, and based on the supporting papers in this action, Lockton respectfully requests that the Court enter an order: (1) declaring that CPLR § 7515's prohibition of "mandatory arbitration clauses" for "any allegation or claim of discrimination" is preempted by the FAA or is otherwise inconsistent with federal law such that it does not apply to Jhaveri's allegations against Lockton; (2) declaring that CPLR § 7515 does not preclude arbitration of this dispute; (3) requiring Jhaveri to participate in the AAA arbitration brought by Lockton; and (4) immediately and permanently enjoining Jhaveri and his counsel, agents, or anyone acting on

his behalf from pursuing claims against Lockton for alleged violations of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the New York State Human Rights Law, the New York Labor Law, the New York City Human Rights Law, or any other claims in connection with or arising out of Jhaveri's employment by Lockton or the termination thereof, outside of arbitration.

Dated: September 17, 2020

New York, New York

                                                                  Respectfully submitted,

                                                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Michael B. Carlinsky*
     Michael B. Carlinsky
     Jennifer J. Barrett
     Ryan A. Rakower
     51 Madison Avenue, 22nd Floor
     New York, NY 10010
     Telephone: (212) 849-7000
     michaelcarlinsky@quinnemanuel.com
     jenniferbarrett@quinnemanuel.com
     ryanrakower@quinnemanuel.com

     *Attorneys for Petitioners Lockton Management, LLC, LCM Holdco, LLC, and Lockton Capital Markets, LLC*